OPINION
{¶ 1} Michael S. Morman is appealing his conviction for one count of public indecency, in violation of R.C. 2907.09(A)(1).
 {¶ 2} On February 20, 2002, Dayton Vice Detectives Keith Coberly and William Knight entered McCook's Theater located at 1267 North Keowee Street in Dayton, Ohio to investigate complaints regarding public indecency and other sexual activity occurring within the theater. McCook's is an adult store, open to the public, that sells sex-related "novelty" items and movies. A patron can pay a three-dollar fee and enter the back of the store through a turnstile to view adult videos in a room containing four rows of booths. A patron standing outside a doorless booth could view half of the interior of the booth. Additionally, each booth is equipped with two rounded mirrors, one on the wall and one on the ceiling, to externally monitor the activity within the booth. Patrons wishing to view dancing women who remove clothing for monetary contributions proceeded further to another room.
 {¶ 3} Det. Coberly testified that, at approximately 8:00 p.m. on February 20, 2002, he entered McCook's in plain clothes. He approached the back of the store to investigate the complaints. He determined that booth number five was occupied because he could hear the video. As Det. Coberly walked by booth number five, he observed Morman and noticed that Morman had his pants pulled down between his waist and his knees, with his hand moving around in his crotch area beneath a jacket on his lap.
 {¶ 4} Believing Morman was masturbating, Det. Coberly identified himself as a police officer and asked Morman to stand up and step from the booth. As Morman did so, his erect penis was fully exposed to Det. Coberly. Det. Coberly escorted Morman to a private area within the store and administered Miranda warnings. Det. Coberly then asked Morman why he had been masturbating in the booth, and Morman responded, "Well why do they have these places then?"
 {¶ 5} Morman was charged with two counts of public indecency in violation of R.C. 2907.09(A)(1) and (A)(3). Following a bench trial, Morman was convicted of public indecency in violation of R.C. 2907.09(A)(1) upon the trial court's finding that he had unlawfully and recklessly exposed his private parts under circumstances in which his conduct was likely to be viewed by and to affront others, not members of his household. Morman was sentenced to thirty days in the Dayton Human Rehabilitation Center and ordered to pay a $100.00 fine plus court costs. The sentence was suspended, and Morman was placed on probation for one year and ordered to perform fifty hours of community service.
 {¶ 6} Morman appeals his conviction, asserting one assignment of error:
 {¶ 7} "Mr. Morman's conviction was against the manifest weight of the evidence and is contrary to law."
 {¶ 8} Morman contends that his conviction was against the manifest weight of the evidence because the evidence did not establish that Morman had exposed himself, nor did it establish that Morman's conduct was likely to be viewed by and affront others.
 {¶ 9} In reviewing a manifest weight of the evidence claim, "[t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v.Thompkins (1997), 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541. "The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Id.
 {¶ 10} Morman was charged with public indecency as set forth in R.C.2907.09(A) as follows:
 {¶ 11} "(A) No person shall recklessly do any of the following, under circumstances in which his or her conduct is likely to be viewed by and affront others, not members of his or her household:
 {¶ 12} "(1) Expose his or her private parts, or engage in masturbation[.]"
 {¶ 13} Morman's manifest weight of the evidence argument is based upon his claim that his private parts were never exposed, thus it would have been impossible for other McCook's patrons to have viewed and been affronted by his conduct. We disagree.
 {¶ 14} Det. Coberly testified that he entered McCook's and proceeded to the booths at the back of the store. The interior of the booths could not be viewed from the front of the store; however, once an individual proceeded to the back of the store, it was possible to see a good portion of the booths' interiors. Additionally, each booth was equipped with two mirrors situated inside the booth so that the interior activity of the booth could be monitored externally.
 {¶ 15} Det. Coberly walked by the booth occupied by Morman and noticed that Morman's pants had been pulled down between his knees and his waist. A jacket was covering Morman's private parts while he was seated; however, when Morman stood up at Det. Coberly's request, his private parts were fully exposed. Thus, at some point, Morman had to rearrange his pants to unveil his private parts. Given the easy access to view the booth's interior, and the location of the booth in a public area, it was likely that his conduct of exposing himself would have been viewed by another patron.
 {¶ 16} Morman makes the alternative argument that, if this court should find that he had exposed himself under the statute, the conduct was not likely to be viewed by and affront others. Morman's argument is based upon this court's decision in State v. Roberts, Montgomery App. No. 19035, 2002-Ohio-2163, where we interpreted the phrase "is likely to be viewed by and affront others" to mean that, rather than using a reasonable person or man of common intelligence standard, the statute contemplates a determination of whether individuals who are likely to view the conduct would likely be affronted if they saw the conduct.
 {¶ 17} Nonetheless, even under the Roberts standard, we do find that Morman's conduct was likely to have been viewed by other patrons and was likely to affront others. As we previously stated, the record reveals that the location of the booths was in a public place in an area easily accessible to other patrons, and any patron in that portion of the store would be able to see a great portion of the interior of the booth.
 {¶ 18} We also find that Morman's conduct would be likely to affront those patrons who might have viewed it. In this situation, unlike that in a nudist colony, which is referenced in the commentary of R.C.2907.09, it is likely that patrons wishing to view naked dancing ladies would be affronted by the view of a naked man. Similarly, a patron wishing to see an adult movie would likely be affronted by viewing male nudity in the booth next door.
 {¶ 19} In this case, we cannot say that the trial court lost its way. The conviction of public indecency under R.C. 2907.09(A)(1) was supported by some competent, credible evidence on each element of the charge.
 {¶ 20} Accordingly, Morman's conviction was not against the manifest weight of the evidence, and his assignment of error is without merit.
 {¶ 21} We affirm the judgment of the trial court.
BROGAN, J. and GRADY, J., concur.